UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| JEREMY LEE HEDMAN, | : | Case No. 1:10-cv-546 |
| | : | |
| Plaintiff, | : | Judge Timothy S. Black |
| | : | |
| vs. | : | |
| | : | |
| ALLIANZ SEGUROS SA, | : | |
| | : | |
| Defendant. | : | |

**DECISION AND ENTRY GRANTING ALLIANZ SEGUROS SA'S MOTION
TO DISMISS FOR LACK OF PERSONAL JURISDICTION (Doc. 79)**

This civil case is before the Court on the Motion of Allianz Seguros SA
("Seguros") to Dismiss for Lack of Personal Jurisdiction. (Doc. 79). Plaintiff Jeremy
Lee Hedman ("Hedman") filed a Memorandum in Opposition to the Motion to Dismiss.
(Doc. 80). Seguros then filed a Reply. (Doc. 82). The Motion to Dismiss is now ripe for
decision.

## I. FACTS ALLEGED

In late September 2008, Hedman, an Ohio citizen, traveled to Brazil at the request
of his employer, Cincinnati-based Super Systems, Inc. ("SSI"), to perform work at the
facility of Maxitrate Tratamento Termico e Controles ("Maxitrate") in São Paulo, Brazil.
On October 2, 2008, Hedman was working for SSI on one of Maxitrate's industrial
furnaces when pressurized nitrogen gas escaped from the furnace and caused an
explosion. The explosion resulted in the death of individuals working at the Maxitrate

1

facility and severely injured Hedman.  After the explosion, Hedman was eventually medically evacuated back to Ohio.

Maxitrate filed suit in this Court on its own behalf and in conjunction with the families of its deceased and injured employees.  Hedman, a named defendant in the lawsuit filed by Maxitrate, filed a counterclaim alleging that the significant damages he suffered were a result of the negligence of Maxitrate and its employees.  Maxitrate timely notified its insurer, Defendant Seguros, regarding Hedman's counterclaim.  Seguros denied coverage to Maxitrate and refused to defend Maxitrate against Hedman's claims.

Ultimately, a settlement was reached in which Seguros did not participate. Maxitrate agreed to a consent judgment in favor of Hedman and assigned to Hedman any potential bad-faith and breach of contract claims it may have against Seguros. Thereafter, Hedman filed his Supplemental Third Party Complaint, in which he exercised his rights to pursue breach of contract, bad-faith, and statutory claims against Seguros. After Seguros was served, it filed an Answer and subsequently moved to dismiss for lack of personal jurisdiction.

## II. ANALYSIS

Seguros moves dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(2).  "The party seeking to assert personal jurisdiction bears the burden of demonstrating that such jurisdiction exists." *Youn v. Track, Inc.*, 324 F.3d 409, 417 (6th Cir. 2003) (citing *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883 (6th Cir.2002)); *see also Bird v. Parsons*, 289 F.3d 865 (6th Cir. 2002); *Schneider v. Hardesty*, 669 F.3d 693 (6th Cir.

2011). In cases where plaintiff seeks to invoke this Court's jurisdiction on the basis of diversity, the Court must "examine the law of the forum state to determine whether personal jurisdiction exists." *Estate of Thomson ex rel. Estate of Rakestraw v. Toyota Motor Corp. Worldwide*, 545 F.3d 357, 361 (6th Cir. 2008) (citing *Calphalon Corp. v. Rowlette*, 228 F.3d 718 (6th Cir.2000)). If Ohio law authorizes jurisdiction over Defendant, the Court must then "determine whether that authorization comports with the Due Process Clause of the Fourteenth Amendment." *Id.* (citing *Brunner v. Hampson*, 441 F.3d 457 (6th Cir. 2006); *see also Schneider*, 669 F.3d at 699 (stating that because "Ohio's long-arm statute is not coterminous with federal constitutional limits[,]" plaintiff "must demonstrate that both due process and Ohio's long-arm statute are satisfied").

In the absence of an evidentiary hearing, plaintiff's "burden is merely that of making a *prima facie* showing that personal jurisdiction exists[,]" and the court "must consider the pleadings and affidavits in the light most favorable to the plaintiff." *Serras v. First Tenn. Bank Nat'l Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989) (citations omitted). Where, however, "'plaintiff has received all of the discovery it sought with respect to personal jurisdiction and there does not appear to be any real dispute over the facts relating to jurisdiction,' the *prima facie* 'proposition loses some of its significance.'" *Conn v. Zakharov*, 667 F.3d 705, 711 (6th Cir. 2012) (citations omitted).

In this case, even assuming personal jurisdiction under Ohio's long-arm statute exists,[1] the Court concludes that the constitutional due process requirements are not met.

Hedman argues that the applicability of specific jurisdiction exists, which requires that the Court examine "[t]he nature and quality of the act, as well as the circumstances surrounding its commission[.]" *Nationwide Mut. Ins. Co. v. Tryg Int'l Ins. Co., LTD*, 91 F.3d 790, 794 (6th Cir. 1996) (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945)). The Court possesses specific jurisdiction over Seguros "only if [its] contacts with Ohio satisfy [a] three-part test" set forth by the Sixth Circuit in *S. Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374 (6th Cir.1968). The test requires that:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

---

[1] The Court makes no determination as to whether personal jurisdiction is satisfied under Ohio's long-arm statute. Allianz's Motion to Dismiss fails to address Ohio's long-arm statute and, instead, simply argues that personal jurisdiction is not proper as within constitutional limits. In the Supplemental Third-Party Complaint, Hedman asserts that personal jurisdiction over Allianz is proper pursuant to Ohio Rev. Code § 2307.382(A)(3), which provides that "[a] court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's…[c]ausing tortious injury by an act or omission in this state." Courts have concluded that, "[t]o satisfy (A)(3), both the tortious act and the injury must occur in Ohio." *Hildebrand v. Steck Mfg. Co., Inc.*, 279 F.3d 1351, 1355 (6th Cir. 2002) (citing *Weller v. Cromwell Oil Co.*, 504 F.2d 927, 930 (6th Cir.1974); *Gor–Vue Corp. v. Hornell Elektrooptik AB*, 634 F.Supp. 535, 537 (N.D. Ohio 1986); *Busch v. Serv. Plastics, Inc.*, 11 Ohio Misc. 131, 261 F.Supp. 136, 140 (N.D. Ohio 1966)). In other words, "[t]he presence of the alleged tortfeasor is required." *Id*.

The Court questions whether jurisdiction is proper under Ohio Rev. Code § 2307.382(A)(3) because any injury to Maxitrate, *i.e.*, the entity to whom the duties to defend, indemnify and settle were owed, is a Brazilian company who entered into the contractual relationship with Seguros in Brazil. There is nothing presented at this time demonstrating that Seguros acted in Ohio or that Maxitrate suffered any injury in Ohio. Presumably, because Maxitrate is a Brazilian company, any injury it suffered as a result of Seguros' failure to defend and indemnify was suffered in Brazil.

4

*Bird*, 289 F.3d at 874 (citations omitted). "If any of the three requirements is not met, personal jurisdiction may not be invoked." *Miller v. AXA Winterthur Ins. Co.*, 694 F.3d 675, 680 (6th Cir. 2012) (citing *LAK, Inc. v. Deer Creek Enters.*, 885 F.2d 1293, 1303 (6th Cir. 1989)).

With regard to the first part of the test, "[t]he purposeful availment requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person." *Schneider*, 669 F.3d at 701-02 (citations omitted). "[C]ourts have been unwilling to allow states to assert personal jurisdiction over foreign defendants where the defendant's presence in the forum arose from the unilateral acts of someone other than the defendant." *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1092 (10th Cir. 1998) (citing *World-Wide Volkswagen v. Woodson*, 444 U.S. 286 (1979)).

Recently, the Sixth Circuit addressed specific jurisdiction in the case of *Miller*, 694 F.3d 675. In *Miller*, plaintiff was involved in an incident that occurred during a professional hockey game in Switzerland. Following the incident, Swiss civil judgments were issued against plaintiff and in favor of the injured victim's insurer ("Allianz") and plaintiff's former hockey club ("ZLE"). *Id*. at 677. The hockey club's insurer ("Winterthur") later sent a letter to plaintiff in Michigan confirming its "responsibility for the costs of criminal and civil judgments and proceedings pending [in Switzerland] and previous attorneys' fees[.]" *Id*. at 677-78. When Allianz and ZLE demanded payment

from plaintiff on the judgments, Winterthur declined to pay the judgments in full and plaintiff sued Wintherthur in Michigan. *Id*. at 678.

Even though Winterthur sent a letter to plaintiff in Michigan confirming its responsibilities, the Sixth Circuit affirmed dismissal of plaintiff's claims for lack of personal jurisdiction. *Id*. at 681. In so doing, the Sixth Circuit focused on the fact that: (1) any duties Winterthur owed to plaintiff arose "while both parties were in Switzerland[;]" (2) Winterthur's communications directed into the forum did not establish any ongoing business relationship within the forum; and (3) the relationship between the parties involved no performance in Ohio. *Id*. at 680.

In this case, Hedman first asserts that Seguros availed itself of Ohio law when it denied coverage to Maxitrate and failed to defend or attempt to settle the counterclaims asserted against Maxitrate in this district court in Ohio. However, there is no showing that Seguros ever took any action in Ohio. Plaintiff does not even present evidence that Seguros communicated its denial of coverage and a defense to anyone in Ohio.

In addition, Hedman cites no authority, and the Court has found none, to support the proposition that a court can exercise personal jurisdiction over an insurer simply because an insured or a third-party chooses to file suit in a particular forum. Maxitrate and Hedman, not Seguros, chose to litigate this dispute in Ohio. Thus, the general proposition that "the unilateral activity of another party or a third person" is not sufficient to demonstrate purposeful availment appears to govern the circumstances in this case. *Schneider*, 669 F.3d at 701. Accordingly, the Court finds that Seguros did not

6

purposefully avail itself to Ohio simply because it declined to indemnify, defend or attempt to settle claims a third-party filed in Ohio.

Even insofar as the Court determined that Seguros had "contact" with Ohio upon communicating its decision to not indemnify or defendant Maxitrate with regard to the claims asserted by Hedman in Ohio, any such contact is attenuated and fortuitous. The duties Seguros allegedly breached indisputably arise from an insurer (Seguros) and insured (Maxitrate) relationship formed in Brazil, between Brazilian businesses maintaining their principal places of business in Brazil. The insurance policy at issue predominately, if not exclusively, insured risks located in Brazil and is most likely governed by Brazilian law. Further, the incident purportedly giving rise to the duties to indemnify and defend Maxitrate occurred solely within Brazil.

The Court also rejects Hedman's contention that Seguros availed itself of Ohio law when it insured Maxitrate knowing that Maxitrate did business with Super Systems, Inc., an Ohio corporation. Maxitrate's unilateral act of engaging in its own business dealings with an Ohio business and its employees is not attributable to Seguros. *See Schneider*, 669 F.3d at 701 (stating that "the unilateral activity of another party or a third person" is not sufficient to demonstrate purposeful availment); *see also Tryg*, 91 F.3d at 796 (agreeing that activities undertaken by plaintiff in the forum state, even when "undertaken…to perform its obligations under the contract" with defendant, "should not be considered in determining whether personal jurisdiction exists over defendant").

Accordingly, having concluded that Hedman fails to demonstrate that Seguros purposefully availed itself to Ohio, the Court "need not dwell on the other criteria" because "each criterion represents an independent requirement, and failure to meet any one of the three means that personal jurisdiction may not be invoked." *LAK, Inc.*, 885 F.2d at 1303; *see also Miller*, 694 F.3d at 680. Nevertheless, the Court concludes that Hedman's claims cannot arise from Seguros' contact with the forum in the absence of any showing that Seguros has any significant contact with Ohio.

Finally, the claims asserted against Seguros have such a tenuous connection to Ohio that the exercise of jurisdiction over Seguros is unreasonable. The court considers a number of factors in assessing "whether the exercise of jurisdiction is reasonable," including "(1) the burden on the defendant; (2) the interest of the forum state; (3) the plaintiff's interest in obtaining relief; and (4) other states' interest in securing the most efficient resolution of the policy." *Air Products and Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 554-55 (6th Cir. 2007) (citing *Intera Corp. v. Henderson*, 428 F.3d 605 (6th Cir. 2005)).

While recognizing that litigating this dispute in Brazil poses a large burden on Hedman, the burden on Seguros is significant as a matter of law. As noted by the Supreme Court, "[t]he unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders." *Asahi Metal Indus. Co., Ltd. v. Superior Court of California, Solano Cnty.*, 480 U.S. 102, 114 (1987).

8

The Court finds the severe burden placed on Seguros in litigating in a foreign country is further exacerbated here by the fact that Seguros has no demonstrable contacts with Ohio.

In addition, insofar as Ohio may have an interest in ensuring that its citizens are fully compensated for injuries incurred in foreign countries, the principal relationship at issue in this case is the insurance relationship between two Brazilian companies. Certainly, Brazil maintains a significant interest in enforcing insurance contracts negotiated, sold and delivered in Brazil by a Brazilian insurer insuring the risks of a Brazilian company principally conducting its business in Brazil. Finally, Brazilian law likely governs the rights and duties arising under the insurance contract. Accordingly, the Court determines that the weight of these factors demonstrates that requiring Seguros to defend this litigation in Ohio is unreasonable.

Based on all of the foregoing, the Court concludes that exercise of personal jurisdiction over Seguros in this case would violate constitutional due process.

### III.  CONCLUSION

Accordingly, the Court **GRANTS** the Motion to Dismiss (Doc. 79) and **DISMISSES** the claims asserted against Seguros **WITHOUT PREJUDICE** for lack of personal jurisdiction.  The Clerk shall enter judgment accordingly, and there being no claims remaining  this case is **CLOSED** in this Court (but for the expressly retained jurisdiction to enforce settlement).

**IT IS SO ORDERED.**

Date:  7/24/14                             ___*s/ Timothy S. Black*___
                                          Timothy S. Black
                                          United States District Judge